# EXHIBIT A

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

**STATE OF RHODE ISLAND**       **SUPERIOR COURT**
**KENT, SC**

**JUAN PIMENTEL**

    **VS**                     **C.A. NO.:**

**DEUTSCHE BANK NATIONAL TRUST COMPANY**
**AS TRUSTEE FOR THE CERTIFICATEHOLDERS**
**OF IXIS REAL ESTATE CAPITAL TRUST 2005-HE3,**
**MORTGAGE PASS-THROUGH CERTIFICATES,**
**2005-HE3,**
**SELECT PORTFOLIO SERVICING, INC.**

## COMPLAINT

Plaintiff, by his attorney, complains of Defendants as follows:

1.    Plaintiff is a resident of the State of Rhode Island with an address of 158 Briggs Street, Providence, Rhode Island. This property is his residence.

2.    Plaintiff executed a mortgage to Novelle Financial Services on February 4, 2005. A copy is attached as Exhibit A

3.    Harmon Law Offices, P.C. ("Harmon") is a Massachusetts Professional Corporation, which does business in Rhode Island as a debt collector.

4.    Select Portfolio Servicing, Inc. ("SPS") is a foreign corporation. It is a loan servicer for the owner of Plaintiff's mortgage and note. It is a debt collector and it does not own his mortgage.

5.    Deutsche Bank National Trust Company Bank as trustee on behalf of the certificateholders of Ixis Real Estate Capital Trust 2005-HE3, Mortgage Pass-Through Certificates, 2005-HE3 ("Deutsche Bank") claims to own the note and mortgage.

6.    Harmon on behalf of SPS has scheduled a foreclosure sale for Plaintiff's home on May 17, 2019 at 12:00 P.M., a copy of which is

1

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

attached as Exhibit B. Plaintiff has not been mailed a Notice of Default as provided by the terms of the mortgage nor an acceleration notice as provided by the terms of the mortgage.

## COUNT I
## BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND DEALING

7.      Paragraphs 1-6 are incorporated by reference.

8.      Neither SPS nor the alleged trust has sent Plaintiff a notice pursuant to the provisions of paragraph 22 of the mortgage and has not accelerated the note pursuant to the terms of the mortgage.

9.      Before an acceleration of the loan was declared, the Lender was required to specify:

   a.      the default;

   b.      the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

   c.      that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to assert the non-existence of a default of Borrower to acceleration and sale.

10.     Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

   **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to**

2

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not  cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the **STATUTORY POWER OF SALE** and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the **STATUTORY POWER OF SALE**, Lender shall  mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

11.     Specifically the provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage. There was not strict compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above.

12.     SPS claims to have sent Plaintiff what it purports to be a default notice , dated December 21, 2018, attached as Exhibit C. This letter, sent by certified mail was not deposited in the United States mail on December 21, 2018. Rather, it was deposited by a mail vendor for SPS in the United States mail on December 22, 2018. This is the usual practice of SPS, which hires vendors who provide its mailing services. This letter  was mailed by certified mail and  not by regular first class mail. Plaintiff did not receive this letter until January 9, 2019.

13.     This letter also did not comply with the terms of the mortgage since it stated that Plaintiff had thirty days to cure from the date of this letter. However the terms of paragraph 22 of the mortgage indicate that Plaintiff had thirty days from the date that the notice was given to him by being

3

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

deposited in the mail, not thirty days from the date of the letter only if first class mail, without certified mail return receipt was utilized.

14.    The mortgage provides that Plaintiff be provided at least thirty days to cure the alleged default.  However SPS, not on its own, but through a contract vendor,  placed this letter in the mail on December 22, 2018, which was 29 days before the cure date, which it stated was thirty days after the date of the letter, which was January 20, 2019, which was not in compliance with the terms of the mortgage.

15.    This deceptive notice also advised Plaintiff that he had to cure on or before the cure date.

16.    The letter thus did not specify an accurate cure date and demanded that he cure the default 29 days from the date the letter was deposited into the United States mail. As a result there was no strict compliance with the terms of the mortgage due to the fact that SPS deceptively and not in strict compliance falsely stated that he was required to cure the default within thirty days of the date of the letter, which was not in strict compliance with the terms of the mortgage.

17.    This notice was not given Plaintiff  until January 9, 2019 due to the fact that the SPS vendor mailed this to Plaintiff by certified mail, not merely regular first class mail.

18.    This condition of actually being at home to pick up the mail did not strictly comply with the terms of the mortgage, which provided that notice would be deemed given when a first class letter without any restrictions, such as return receipt requested and signature by Plaintiff, was placed in the United States mail

19.    This letter also deceptively stated that if plaintiff did not cure that SPS, not the lender, may initiate foreclosure, which is a Judicial Action. It made no mention of the exercise of the statutory power of sale. This failure to reference the statutory power of sale did not strictly comply with the terms of the mortgage.

20.    This letter also deceptively stated that:

4

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

You have the right to reinstate after acceleration. SPS requires that you pay reinstatement amounts in certified funds.

21.     The mortgage did not require that Plaintiff was required to pay an arrearage by certified funds.

22.     The only provisions of the mortgage which required payment by certified funds was paragraph 1 which stated:

In the event that any check or other instrument was returned  to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender:

(a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

23.     Plaintiff never provided any lender or mortgagee or loan servicer a check with insufficient funds to pay the mortgage, which was returned unpaid.

24.     Plaintiff was  never advised by any lender or mortgagee or loan servicer that a check had been returned for nonpayment and that as a result all payments had to be paid by (a) cash;(b) money order;(c) certified check, bank check, treasurer's check, provided any such check is drawn upon and institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

25.     Despite this fact, the purported default letter deceptively advised Plaintiff that the only way to cure the purported default was by certified funds contrary to the terms of the mortgage.

26.      SPS took it upon itself to deceptively and falsely impose an additional condition on the requirements to cure any arrearage, namely payment by certified funds to pay to SPS.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

27.    This additional deceptive and falsely stated condition, imposed by SPS, with no reference to the purported owner of the mortgage loan,  did not strictly comply with the terms of the mortgage.

28.    No language in the  terms of the mortgage required payment of the arrearage by certified funds.

29.    As a result this letter did not strictly comply with the terms of the mortgage.

30.    In this letter SPS  did not specify a specific and accurate amount which had to be cured on a particular date.

31.    The amount stated as $322,198.14 was not an accurate amount of the purported default.

32.    In fact the letter indicates that this amount was not accurate and that Plaintiff  had to make unspecified payments arising after January 23, 2019 to cure the default. It stated:

Additional payments may become due between the date of this letter and the cure date. If you wish to cure the default after those payments become due, they should be added to the Amount Required to Cure. You have thirty (30) days from the date of this notice to pay the Amount Required to Cure.

33.    It also stated:
To obtain the amount required to bring the loan current, please contact SPS at the toll free number 800-635-9698.

34.    The language of the mortgage does not provide that Plaintiff was required to contact any party to obtain the amount necessary to cure the default.

35.    This demand  was not a specific amount necessary to cure this default as it required Plaintiff to contact SPS for the exact amount to cure.

36.    The purpose of a default letter pursuant to the terms of the mortgage was to declare the loan in default and to provide a specific amount to be paid by Plaintiff and to provide the borrower at least thirty days to pay that

6

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

designated and specific amount of the default or face the possibility acceleration and sale under the statutory power of sale.

37.    There was no language in the mortgage which authorized the note holder to accelerate the mortgage loan other than based on the failure of Plaintiff to pay the specific amount designated in the default letter at a designated time at least thirty days after the default letter was deposited in the United States mail, using regular first class mail, without any restriction, such as certified mail return receipt requested.

38.    The inclusion of additional amounts and day to day unspecified mounts to be included in the arrearage amount was not permitted or authorized by any language in the mortgage.

39.    Thus the purported default letter deposited in the United States mail on December 22, 2018 by a vendor for SPS did not strictly comply with the terms of the mortgage because it did not specify an exact amount to be cured.

40.    The contractual language in the mortgage required thirty days to cure after notice was properly given to cure the amount in default.

41.    The deceptive inclusion of additional amounts which had not yet been determined did not provide the borrowers the thirty days required to cure these amounts   under the terms of the mortgage.

42.    The mortgage was drafted by Novelle Financial Services ("Novelle") the originator of the mortgage loan, with no input from Plaintiff as to its terms.

43.    Any ambiguities regarding any obligations and rights under the terms of the mortgage thus must be strictly construed against the drafter, Novelle and its successors and assigns.

44.    The additional deceptive language, which created the obligation to pay additional amounts determined by SPS in its letter did not comply with the terms of the mortgage at all and certainly did not strictly comply with the terms of the mortgage.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

45.   SPS's inclusion of deceptive terms not permitted by the terms of the mortgage in a default letter rendered this letter invalid.

46.   As a result the Defendant was not authorized to accelerate the mortgage loan and was not authorized to exercise the statutory power of sale.

47.   The specific demand in the letter mailed by SPS for $322,198.14 was an inaccurate amount, which did not accurately reflect the amount actually due pursuant to the terms of the mortgage.

48.   This amount, claimed to be the arrearage, included multiple unreasonable and unnecessary fees and charges of $2,616.74 which were charged to the mortgage loan account contrary to the terms of the mortgage and included improperly charged foreclosure fees for prior foreclosure attempts without a valid default letter along with improper charges for monthly property inspection fees and other charges not permitted pursuant to the terms of the mortgage.

49.   For a default notice to be strictly compliant with the terms of the mortgage, an accurate amount of default to be cured must be stated.

50.   Since this amount is not an accurate cure amount, the mortgage was not strictly complied with and as a result, the statutory power of sale cannot be exercised pursuant to the terms of the mortgage.

51.   The purported default letter also deceptively advised Plaintiff that he could make a payment in various ways after acceleration, but deceptively failed to state that he could only cure the default five days prior to the sale.

52.   This deceptive omission did not comply with paragraph 19 of the mortgage, which limits cure of the default to a period no later than five days of the sale.

53.   As a result of this failure to strictly comply with the terms of the mortgage, the mortgagee could not exercise the statutory power of sale.

54.   A mortgagee seeking to exercise of the statutory power must provide the borrowers a Notice of Foreclosure Counseling 45 days prior to mailing a

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

Notice of Sale, pursuant to the provisions of R.I.G.L 34-27-4, a Notice of Foreclosure Counseling, pursuant to R.I.G.L. § 34-27-3.1which states:

**§ 34-27-3.1. Foreclosure counseling.**

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), **the mortgagee** shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

55.    Exhibit D is a copy of this purported notice, which Plaintiff received along with the purported default notice

56.    Exhibit D does not comply with this statute since the name of the actual mortgagee is not provided.

57.    The entity seeking to send a Notice of Sale pursuant to R.I.G.L 34-27-4, must mail a Notice of Foreclosure Counseling.

9

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

58.     Failure to so notify the Plaintiff will render the sale void.

59.     Neither Deutsche Bank nor SPS mailed the Plaintiff a notice in the form required pursuant to the provisions of paragraph 22 of the mortgage.

60.     The provisions in paragraph 22 of the mortgage were a condition precedent to the exercise of the power of sale of the mortgage.  There was no compliance with the terms of the mortgage to exercise the statutory power of sale as indicated above. Any alleged exercise of the statutory power of sale to Plaintiff was defective because a default notice and a valid acceleration notice were never sent as required by paragraph 22 of the mortgage.

61.     Pursuant to the terms of the mortgage and the statutory scheme, Deutsche Bank was not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property at any time.

62.     The actions of the Defendant constituted a breach of contract, resulting in damages to the Plaintiff, who hired an attorney to commence this case.

63.     Plaintiff's mortgage loan account has been charged unreasonable fees and expenses for this attempt to foreclose.

64.     As a result of the conduct of Deutsche Bank he has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home.

65.     He has become nervous and anxious and has lost sleep worrying about a foreclosure which should not take place.

66.     He has received mail regarding this foreclosure, drawing his attention and causing him to worry about this sale.

67.     The conduct of the Defendant in not complying with the terms of the mortgage and the provisions of R.I.G.L 34-27-3.1 and R.I.G.L. 34-27-4 were willful, wanton and reckless, warranting the imposition of punitive damages.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

68.     Plaintiff has incurred legal fees for the defense of this improper foreclosure and for the prosecution of this action.

69.     The Defendant has not engaged in good faith and dealing with the Plaintiff contrary to the terms of the mortgage contract by scheduling this sale.

70.     The amount claimed for damages is less than $70,000.00.

WHEREFORE, Plaintiff demands the following relief:

a.     Actual damages and punitive damages against Deutsche Bank for failure to comply with the terms of the mortgage and for legal fees and actual damages arising from the breach of contract and for failure to comply with R.I.G.L. 34-27-3.1 and R.I.G.L 34-27-4 in an aggregate amount less than $70,000.00.

b.     All other just and proper relief.

JUAN PIMENTEL
By his Attorney

May 16, 2019              /s/ John B. Ennis
                         JOHN B. ENNIS, ESQ. #2135
                         1200 Reservoir Avenue
                         Cranston, Rhode Island 02920
                         (401) 943-9230
                         Jbelaw75@gmail.com

## COUNT II

### CLAIM FOR INJUNCTIVE RELIEF AND A PRELIMINARY AND PERMANENT INJUNCTION

71.     Paragraphs 1-70  are incorporated by reference.

72.     Plaintiff will be irreparably harmed if Defendant's improper exercise

11

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

of the statutory power of sale without complying with the terms of the mortgage is not voided and Defendant, Deutsche Bank is allowed to obtain title to Plaintiff's home.

73.    The failure of Deutsche Bank to comply with the terms of the provisions of R.I.G.L 34-27-3.1, R.I.G.L 34-27-4and the terms of the mortgage will render void any attempted foreclosure by Statutory Power of Sale, without having the statutory power to do so and is a violation of due process of law.

74.    These facts demonstrate that Plaintiff has a substantial likelihood of success. Likewise a foreclosure of the property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant.

75.    Plaintiffs reside in the premises.

76.    Such relief sought by Plaintiff will not disserve the public interest if imposed.

77.    Since there has been no compliance with the terms of the mortgage, and the statutory requirements, any foreclosure will be void.

78.    I have a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed.

79.    The failure of the Defendant to comply with paragraph 22 of the mortgage, renders  void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability.

80.    The failure of the purported mortgagee to mail a Notice of Foreclosure Counseling  renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale, without having the contractual or statutory ability to do so.

81.    These facts demonstrate that Plaintiff has  a substantial likelihood of success.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

82.     Likewise a foreclosure of his property by a party not entitled to foreclose on the property will cause him irreparable harm, which hardship is greater than any hardship, which may be claimed by defendants.

83.     Defendants can remedy this situation by mailing a paragraph 22 notice which is compliant with the terms of the mortgage.

84.     Deutsche Bank can remedy this situation by mailing a Notice of Foreclosure Counseling indicating that Deutsche Bank is the mortgagee.

85.     The clear language of the statute requires that any time there is a different mortgagee that it must provide the homeowner a Notice of Foreclosure Counseling forty five days prior to it mailing a Notice of Sale.

86.     Plaintiff has incurred legal fees for the prosecution of this action.

WHEREFORE, Plaintiff demands that this Court:

        a.     Grant a Temporary Restraining Order Restraining and Enjoining Grant a Preliminary Injunction Restraining and Enjoining Select Portfolio Servicing, Inc., Deutsche Bank  or any other entity acting on its behalf from conducting, advertising, adjourning  or continuing a  foreclosure sale at 158 Briggs Street, Providence, Rhode Island pending a hearing on a Preliminary Injunction

        b.     Grant a Preliminary Injunction Restraining and Enjoining Select Portfolio Servicing, Inc., Deutsche Bank  or any other entity acting on its behalf from conducting,  advertising, adjourning or continuing a foreclosure  sale at 158 Briggs Street, Providence, Rhode Island pending a hearing on a Permanent Injunction

        c.     Grant a Permanent Injunction Restraining and Enjoining Select Portfolio Servicing, Inc., Deutsche Bank  or any other entity acting on its behalf from conducting,  advertising, adjourning or continuing a  foreclosure sale at 158 Briggs Street, Providence, Rhode Island until  further Order of this Court.

        d.     Award the Plaintiff actual damages and compensatory damages and legal fees and costs against the Defendant for scheduling a foreclosure

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

without complying the terms of the mortgage and the statutory scheme of the Rhode Island General Laws.

      e.      Grant all other just and proper relief.

                          JUAN PIMENTEL
                          By his Attorney

May 16, 2019                   /s/ John B. Ennis
                                 JOHN B. ENNIS, ESQ. #2135
                                 1200 Reservoir Avenue
                                 Cranston, Rhode Island 02920
                                 (401) 943-9230
                                 Jbelaw75@gmail.com

## COUNT III

## VIOLATION OF R.I.G.L 19-14.11-4

87.    The allegations of paragraphs 1-86 are incorporated by reference.

88.    SPS is a third party loan servicer subject to the provisions of R.I.G.L. 19-14.11-4.

89.    This statute prohibits third party loan servicers from certain actions. This statute prohibits the following actions:

**§ 19-14.11-4. Prohibited acts and practices.**

It is a violation of this chapter for a person to:

(1) Directly or indirectly employ any scheme, device, or artifice to defraud or mislead borrowers or lenders or to defraud any person.

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

(4) Use any unfair or unconscionable means in servicing a loan.

(5) Knowingly misapply or recklessly apply loan payments to the outstanding balance of a loan.

(6) Knowingly misapply or recklessly apply payments to escrow accounts.

(7) Require the unnecessary forced placement of insurance when adequate insurance is currently in place.

(8) Fail to provide loan payoff information within the time period set forth in chapter 19.

(9) Charge excessive or unreasonable fees to provide loan payoff information.

(10) Fail to manage and maintain escrow accounts in accordance with § 19-9-2.

(11) Knowingly or recklessly provide inaccurate information to a credit bureau, thereby harming a consumer's credit worthiness.

(12) Fail to report both the favorable and unfavorable payment history of the consumer to a nationally recognized consumer credit bureau at least annually if the servicer regularly reports information to a credit bureau.

(13) Collect private mortgage insurance beyond the date for which private mortgage insurance is required.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

(15) Knowingly or recklessly facilitate the illegal repossession of chattel collateral.

(16) Fail to respond to consumer complaints in a timely manner.

(17) Conduct any business covered by this chapter without holding a valid license as required under this chapter, or assist, or aid and abet, any person in the conduct of business under this chapter without a valid license as required under this chapter.

(18) Fail to comply with any federal or state law, rule, or other legally binding authority relating to the evaluation of loans for modification purposes or the modification of loans.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

(19) Fail to comply with this chapter, or rules adopted under this chapter, or fail to comply with any orders or directives from the director, or fail to comply with any other state or federal law, including the regulations thereunder, applicable to any business authorized or conducted under this chapter.

90.   By its attempted exercise of the statutory power of sale as alleged, SPS has violated the following provisions of this statute:

(2) Engage in any unfair or deceptive practice toward any person.

(3) Obtain property by fraud or misrepresentation.

(4) Use any unfair or unconscionable means in servicing a loan.

(14) Knowingly or recklessly facilitate the illegal foreclosure of real property collateral.

91.   The conduct of SPS violates the provisions of this statute and are deemed by the State of Rhode Island to be illegal acts, which are prohibited the State of Rhode Island.

92.   These actions are unfair and deceptive and prohibited by law.

Wherefore Plaintiff demands judgment for actual damages, punitive damages and legal fees, in an aggregate amount less than $70,000.00 reduced by any damages received pursuant to Count IV for the actions of SPS which violated the provisions of R.I.G.L 19-14.11-4 and to grant all other just and proper relief.

JUAN PIMENTEL
By his Attorney

May 16, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

16

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

## COUNT IV

## VIOLATION OF THE RHODE ISLAND FAIR DEBT COLLECTION PRACTICES ACT

93.     Paragraphs 1-94 are incorporated by reference.

91.     At the time that SPS obtained servicing rights of the Plaintiff's mortgage, it claimed that the obligation of the Plaintiff was in default.

92.     Defendant, SPS, is a "debt collector" as defined by the provisions of R.I.G.L. § 19-14.9-3 ("RIFDCPA").

93.      This Court has jurisdiction pursuant to the provisions of R.I.G.L. § 19-14.9-13.

94.     The primary business of SPS is the collection of debts.

95.     SPS since May 17, 2018 has committed several violations of the RIFDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

96.     SPS has used multiple unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

97.     SPS has violated the RIFDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt.

98.     Specifically it stated that Deutsche Bank could exercise the statutory power of sale on May 17, 2019.

99.     SPS made false representations regarding the character, amount and legal status of the debt.

100.   In its letter dated December 21, 2018 it falsely stated that the mortgage arrearage included fees and expenses of $2616.74 in an attempt to collect a debt for Deutsche Bank.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

101.       In its letter dated December 21, 2018, in an attempt to collect a debt for Deutsche Bank,   it falsely stated that the mortgage arrearage was $322,198.14.

101.   In its letter dated December 21, 2018, in an attempt to collect a debt for Deutsche Bank,   it falsely stated any arrearage could only be cured by paying in certified funds.

102.   In its letter dated December 21, 2018, in an attempt to collect a debt for Deutsche Bank,   it deceptively omitted advising the Plaintiff that any reinstatement of the mortgage loan could not occur less than five days before the sale.

103.   On or after May 17, 2018, SPS retained Harmons to collect an alleged debt allegedly due to the entity on whose behalf SPS was collecting by seeking to foreclose on Plaintiff's property.

104.   SPS, through this law firm, made various false representations, which were made regarding the character, amount and legal status of the Plaintiff's debt.  These false assertions were made as follows:

> a.       It falsely stated on a number of occasions, after May 17, 2018 through its own documentation and that of its attorneys the amount secured by the mortgage loan.

> b.       It has falsely stated the amount claimed to be due in past due interest and charges, in every statement and document sent to the Plaintiff since that date.

104.   These statements were all false and were violations of R.I.G.L. § 19-14.9-7 (b)(1) for the reasons as alleged previously in this complaint.

105.   SPS claiming to act on behalf of the owner of the mortgage loan, through its attorney, also violated the provisions of R.I.G.L. §19-14.9-7 (b)(e) by threatening to take an action that could not be legally taken, namely that it could exercise the statutory power of sale and conduct a foreclosure sale of the plaintiff's home.

106.   After May 17, 2018  SPS, claiming to be acting on behalf of the owner of the mortgage loan, through its attorney, made  false statements that

18

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

it had had to right to foreclose by sale under power of sale contained in the mortgager for the failure to pay the principal and interest due under the Promissory Note, payment of which was a condition of the mortgage, despite the fact that he alleged trust did not exist under that name  does not own the Plaintiff's mortgage or promissory note.

107.   Deutsche Bank could not take this action because there had never been a valid default letter sent to Plaintiffs.

108.   Each action of SPS described above constitutes a separate violation of the RIFDCPA for which SPS is liable.

109.   All the actions alleged in this complaint were designed to compel the Plaintiff to pay monies to SPS, through its attorney, on behalf of the alleged owner of the note and mortgage under the false threat of foreclosure of his home unless he made such a payment to SPS, through its attorney on behalf of  the entity, which claimed to own the note.

110.   The Plaintiff has incurred  actual damages as a result of the violations of the RIFDCPA:

      a.   Plaintiff has incurred costs for gasoline to visit his attorneys on several occasions, driving to his  attorney's office for round trips totaling more than 9.2 miles.  The IRS standard mileage allowance provides for .56 per mile.

      b.   Plaintiff,  has used his cell phone to call and receive calls from his attorney. These calls are charged to him pursuant to his cell phone usage and monthly fees.

      c.   Plaintiff  has used electricity to recharge his cell phone for calls when he spoke with his attorney.

      d.   He has incurred attorney fees and costs for the prosecution of the Superior Court action.

      e.   He has suffered emotional damages for embarrassment and humiliation by the advertising of a foreclosure of his home on several occasions.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

f.    He has suffered emotional distress due to these actions.

g.    His  mortgage loan account has been charged unreasonable fees and costs.

111.   As a result of the above described acts of SPS, it is liable to the Plaintiff for actual damages, statutory damages, attorney's fees and costs.

WHEREFORE, Plaintiff demands that Judgment be entered against

the Defendant SPS, for the following relief:

A.    Judgment against SPS for actual damages, and statutory damages of $1,000.00 for each violation of the RIFDCPA, with said damages not to exceed $75,000.00 with a reduction of any damages received pursuant to Count III.

B.    Judgment against SPS for legal fees and costs for the prosecution of this action.

C.    For all other just and proper relief.

JUAN PIMENTEL
By his Attorney

May 16, 2019

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com

Plaintiff demands a Trial by Jury

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

# EXHIBIT A

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0022

After Recording Return To:
IMPAC FUNDING CORP. ATTN: DOC CONTROL
1401 DOVE STREET, SUITE 100
NEWPORT BEACH, CALIFORNIA 92660-2431
Loan Number: 4503029118

——————————— [Space Above This Line For Recording Data] ———————————

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated FEBRUARY 4, 2005, together with all Riders to this document.
(B) "Borrower" is JUAN R PIMENTEL,,

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is NOVELLE FINANCIAL SERVICES

Lender is a DELAWARE CORPORATION                                     organized
and existing under the laws of DELAWARE
Lender's address is 1401 DOVE STREET, NEWPORT BEACH, CALIFORNIA
92660-2431
Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated FEBRUARY 4, 2005
The Note states that Borrower owes Lender TWO HUNDRED FIFTY-FIVE THOUSAND EIGHT
HUNDRED FIFTY AND 00/100              Dollars (U.S. $ 255,850.00             )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later
than MARCH 1, 2035
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          DocMagic ☎Parana 800-649-1362
Form 3040 1/03 (rev. 11/02)                    Page 1 of 12                          www.docmagic.com

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0023

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the

| | COUNTY | of | PROVIDENCE | |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: AP 54 LOT 23

which currently has the address of 158 - 160 BRIGGS STREET
                                                                    [Street]

PROVIDENCE                    , Rhode Island    02905                ("Property Address"):
[City]                                              [Zip Code]

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          DocMagic eForms 800-649-1362
Form 3040 1/01 (rev. 11/02)                    Page 2 of 12                              www.docmagic.com

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089PG0024

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                          Page 3 of 12

DocMagic eForms  800-649-1362
www.docmagic.com

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0025

Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument,

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0026

Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund

RI3040-05.mg

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0027

of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                 Page 6 of 12

DocMagic eForms 800-649-1362
www.docmagic.com

J.R.P.

BK 7089 PG 0028

Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK7089PG0029

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

Case 1:19-cv-00289-JJM-PAS   Document 1-1   Filed 05/21/19   Page 31 of 62 PageID #: 35

BK7089PG0030

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                    Page 9 of 12                    DocMagic Direct 800-649-1362
www.docmagic.com

*J.R.P.*

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0031

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                                    Page 10 of 12                          DocMagic eForms 800-649-1362
                                                                                                      www.docmagic.com

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0032

to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. No Outstanding Automatic Orders in Domestic Relations Cases. Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. Homestead Estate. If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

Ri3040I1.mzg

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0033

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Juan R Pimentel_ _____ (Seal)
JUAN R PIMENTEL          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

Witness:                              Witness:

_Jennifer L Caputi_____             _____

_____ [Space Below This Line For Acknowledgement] _____

State of Rhode Island
County of PROVIDENCE

In No. Providence          in said County, on the 4th          day of
February 2005 , before me personally appeared
JUAN R PIMENTEL

, each and all to me known, and known by me to be the party (ies) executing the foregoing instrument, and he/she/they acknowledged said instrument, by him/her/them executed to be his/her/their free act and deed.

OFFICIAL SEAL
JENNIFER L CAPUTI
NOTARY PUBLIC - RHODE ISLAND
My Comm. Expires 9/3/08

_Jennifer L Caputi_____
Signature

_____
Printed or Typed Name

(Seal)                         My commission expires: 9/3/08

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3040 1/01 (rev. 11/02)                Page 12 of 12                DocMagic eForms 800-649-1362
                                                                        www.docmagic.com

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7 0 8 9 PG 0 0 3 4

File No:5015

## EXHIBIT A - LEGAL DESCRIPTION

That certain tract or parcel of land, with all buildings and improvements thereon, situated on the southerly side of Briggs Street, in the City of Providence in the State of Rhode Island, comprising the whole of lot numbered 284 (two hundred eighty-four) and the easterly twenty (20) feet in width by the entire depth of lot numbered 285 (two hundred eighty-five), on that plat entitled, "The Dower Land of the Estate in Cranston of the JOSEPH BURGESS ESTATE Surveyed by the Atwater Schubarth & Haines for the proprietors April 6th 1848", which plat is recorded in the Office of the Recorded of Deeds in said City of Providence in Plat Book 9 at Page 7 and on Plat Card 235.

Property Address:

158-160 Briggs Street
Providence, RI

Assessors Plat 54 Lot 23

J. R. P.

Stewart Title Guaranty Company

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK7089PG0035

Loan Number: 4503029118

# 1-4 FAMILY RIDER
(Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this 4th   day of FEBRUARY, 2005,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  NOVELLE FINANCIAL SERVICES, A DELAWARE
CORPORATION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

158 - 160 BRIGGS STREET, PROVIDENCE, RHODE ISLAND 02905
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY
INSTRUMENT. In addition to the Property described in Security Instrument, the following
items now or hereafter attached to the Property to the extent they are fixtures are added to the
Property description, and shall also constitute the Property covered by the Security Instrument:
building materials, appliances and goods of every nature whatsoever now or hereafter located
in, on, or used, or intended to be used in connection with the Property, including, but not
limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas,
water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves,
refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and
attached floor coverings, all of which, including replacements and additions thereto, shall be
deemed to be and remain a part of the Property covered by the Security Instrument. All of the
foregoing together with the Property described in the Security Instrument (or the leasehold
estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and
the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek,
agree to or make a change in the use of the Property or its zoning classification, unless Lender
has agreed in writing to the change. Borrower shall comply with all laws, ordinances,
regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not
allow any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

Ui3170.rid 1.rem

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

Case 1:19-cv-00289-JJM-PAS   Document 1-1   Filed 05/21/19   Page 37 of 62 PageID #: 41

BK 7089 PG 0036

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                                    Page 2 of 3

DocMagic *EForms* 800-649-1362
www.docmagic.com

*J.R.P.*

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK7089PG0037

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I.   CROSS-DEFAULT PROVISION.  Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_Juan R. Pimentel_ _____ (Seal)          _____ (Seal)
JUAN R PIMENTEL              -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                -Borrower


MULTISTATE 1-4 FAMILY RIDER
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01                          Page 3 of 3

DocMagic *eforms* 800-649-1362
www.docmagic.com

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK 7089 PG 0038

Loan Number: 4503029118

## ADJUSTABLE RATE RIDER
(LIBOR Six-Month Index (As Published In The Wall Street Journal)-Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this    4th    day of FEBRUARY
2005   , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to NOVELLE
FINANCIAL SERVICES, A DELAWARE CORPORATION
("Lender") of the same date and covering the property described in the Security Instrument and
located at:

158 - 160 BRIGGS STREET, PROVIDENCE, RHODE ISLAND 02905
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN
THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE
LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN
CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE
BORROWER MUST PAY.

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of    7.625  %. The Note provides for
changes in the interest rate and the monthly payments, as follows:

4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A)  Change Dates
The interest rate I will pay may change on the   1st   day of MARCH      , 2007   ,
and on that day every  6      month thereafter. Each date on which my interest rate could change
is called a "Change Date."
(B)  The Index
Beginning with the first Change Date, my interest rate will be based on an index. The "Index"
is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the
London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure
available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 625/1000                          percentage points (    6.625  %) to
the Current Index. The Note Holder will then round the result of this addition to the nearest one-
eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this
rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be
sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET
JOURNAL)-Single Family-Fannie Mae Modified Instrument
Universal Systems, Inc (800) 649-1362                Page 1 of 3                           Form 5138 1/01

J.R.P.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

BK7089PG0039

Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.625 % or less than 7.625 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000 percentage points ( 1.000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 13.625 %. My interest rate will never be less than 7.625%.

(E)  **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F)  **Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B.  **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)–Single Family–Fannie Mae Modified Instrument

Document Systems, Inc. (800) 648-1362       Page 2 of 3       Form 3138 1/01

Ui3138.prk

*J.R.P.*

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

# EXHIBIT B

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



02041153
Service
Date
2019/03,

# HARMON LAW OFFICES, P.C.

150 CALIFORNIA STREET
NEWTON, MASSACHUSETTS 02458
TEL: (617) 558-0500
FAX: (617) 244-7304
Business Hours: Monday-Friday 8:00 AM to 5:30 PM

*SERVING MASSACHUSETTS, NEW HAMPSHIRE AND RHODE ISLAND*

March 18, 2019

## NOTICE OF MORTGAGE FORECLOSURE SALE

Re:      158-160 Briggs Street, Providence, RI 02905

Please be advised that this office has scheduled a foreclosure sale to take place at 12:00 PM on May 17, 2019 at the above-referenced premises. We are enclosing a copy of the foreclosure advertisement for your records.

You will not receive any further notice of the sale.

This notice is provided to you because your client, Juan R. Pimentel, held an interest of record in the property thirty (30) days prior to the sale.

This property may qualify for a conciliation conference pursuant to your municipality's Code of Ordinances. We have provided a copy of this notice to a HUD-approved coordinator to schedule a conciliation conference. If you are interested in arranging a conciliation conference, we recommend you contact the following coordinator directly:

Conciliation Coordinator
Rhode Island Housing
44 Washington Street
Providence, RI 02903
Phone: 401-450-1331
E-Mail: ConciliationCoordinator@rhodeislandhousing.org

You may order a reinstatement or payoff 24 hours a day on-line by going to www.hloreinstatement.com or to www.hlopayoff.com. Please follow the instructions contained on the web page. Please note that only requests made by owners, borrowers, mortgagors and authorized parties will be processed. You may also contact us during business hours to request a reinstatement or payoff by calling (617) 558-0598. When completing the on-line form or when calling our office, please reference your Case Number 2008060027 so that we may process your request more quickly.



Addressee: John Ennis

2008060027

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



## IMPORTANT NOTICE

A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney.



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



## Rhode Island General Laws Section 34-27-4(d)

(d)     Foreclosure sales affecting servicemembers. —

(1)     The following definitions shall apply to this subsection and to subsection (c):

(i)     ''Servicemember'' means a member of the army, navy, air force, marine corps, or coast guard and members of the national guard or reserves called to active duty.

(ii)     ''Active duty'' has the same meaning as the term is defined in 10 U.S.C. sections 12301 through 12304. In the case of a member of the national guard, or reserves ''Active duty'' means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. section 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2)     This subsection applies only to an obligation on real and related personal property owned by a servicemember that:

(i)     Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and

(ii)     Is secured by a mortgage or other security in the nature of a mortgage.

(3)     Stay of right to foreclose by mortgagee. - Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4)     Stay of proceedings and adjustment of obligation. - In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i)     Stay the proceedings for a period of time as justice and equity require; or

(ii)     Adjust the obligation as permitted by federal law to preserve the interests of all parties.



2008060027

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



01061147
Service
Date
2019/05.

(5)    Sale or foreclosure. - A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i)    Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii)    If made pursuant to an agreement of all parties.

(6)    Penalties. - A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year ,or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7)    Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated.  Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

*Harmon Law Offices, P.C.*
Attorney for Present holder of mortgage



2008060027

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



## MORTGAGEE'S SALE

### 158-160 Briggs Street Providence, RI
### Plat 054, Lot 0023

The premises described in the mortgage will be sold subject to all encumbrances and prior liens on May 17, 2019 at 12:00 PM on the premises, by virtue of the power of sale contained in a mortgage by Juan R. Pimentel dated February 4, 2005 and recorded in the City of Providence Land Evidence Records in Book 7089, Page 22, the conditions of said mortgage having been broken.

$5,000.00 in cash, certified or bank check is required to bid.  Other terms will be announced at the sale.

HARMON LAW OFFICES, P.C.
Attorney for the Holder of the Mortgage
150 California Street
Newton, MA 02458
(617) 558-0500
2008060027

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

# EXHIBIT C

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



USPS CERTIFIED MAIL

9214 8901 0764 3206 3712 89

JUAN R PIMENTEL
158 BRIGGS ST
PROVIDENCE, RI 02905



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



December 21, 2018

JUAN R PIMENTEL
158 BRIGGS ST
PROVIDENCE, RI 02905

## PLEASE READ THIS NOTICE CAREFULLY. TAKE ACTION TO AVOID THE LOSS OF YOUR PROPERTY.

### NOTICE OF DEFAULT
### RIGHT TO CURE

**Account Number:** 0013125398
**Property Address:** 158 - 160 BRIGGS STREET
PROVIDENCE, RI 02905

Dear Customer(s):

The mortgage loan on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). We have previously sent you letters and communications regarding this default in an attempt to resolve this matter. This letter provides information about the default and what rights you have to cure the default. Select Portfolio Servicing, Inc. (SPS) services your mortgage loan and has been instructed on behalf of the holder of the promissory note to pursue remedies under the Security Instrument unless you take action to cure the default before the Cure Date shown below. The Noteholder on your Loan is Deutsche Bank National Trust Company, as Trustee for the certificateholders of IXIS Real Estate Capital Trust 2005-HE3, Mortgage Pass-Through Certificates, Series 2005-HE3 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250).

This letter provides notice of the following:

**The Default**
You have failed to make payments under the Note and Security Instrument as shown below. This letter is a formal demand for payment.

**Action Required to Cure the Default**
To cure this default, you must pay the Amount Required to Cure together with payments which may subsequently become due, on or before the Cure Date listed below.

**Amount Required to Cure the Default**
As of the date of this letter, the total amount due and required to cure the default on your loan is $322,198.14 (Amount Required to Cure) as itemized below:



RI02 1275 v 2.1                          0019528600005702700                        0013125398

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

| Itemization of Amount Required to Cure<br>Cure Date: January 23, 2019 | | |
|---|---|---|
| Payment due for February 1, 2008 | $ | 319,581.40 |
| *Total amount due includes Escrow payments (Taxes/Insurance) of $540.53* | | |
| Accrued Late Charges | | $0.00 |
| Advances made on Customer's behalf | | $2,616.74 |
| Escrow advance balance (Deficit) | | $0.00 |
| **Total Amount Outstanding** | **$** | **322,198.14** |
| Unapplied balance | $ | 0.00 |
| **AMOUNT REQUIRED AS OF December 21, 2018 TO CURE THE DEFAULT** | **$** | **322,198.14** |

Additional payments may become due between the date of this letter and the Cure Date. If you wish to cure the default after those payments become due, they should be added to the Amount Required to Cure. You have thirty (30) days from the date of this notice to pay the Amount Required to Cure. This Cure Date is January 23, 2019. Fees and other charges may continue to be assessed to your account after the date of this letter pursuant to the terms of the Security Instrument. In addition, there may be other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account not itemized in this letter. While these amounts are not required to cure the payment default, you still owe these amounts. To obtain the amount required to bring the loan current, please contact SPS at our toll free number 800-635-9698.

SPS is not waiving its right to demand that you pay these amounts at a later date. SPS reserves the right to accept one or more payments for less than the Amount Required to Cure, and such acceptance shall not be deemed a waiver of any of its rights under the Security Instrument. This means, for example, if you send us a payment for less than the Amount Required to Cure, we can apply this payment to the amount due and owing, and because the payment did not cure the default, continue the process towards foreclosure. Please be advised that our acceptance of any such partial payment does not prejudice our right to refuse such payment or partial payment in the future.

**Possible Consequences of Default**
Failure to cure the default on or before **January 23, 2019** may result in acceleration of the sums secured by the Security Instrument and sale of the property, unless a loss mitigation alternative to foreclosure has been started. In other words, SPS may initiate foreclosure and require immediate payment in full of the entire outstanding unpaid amount on the account. If that happens, you may lose your home. A foreclosure will result in the involuntary loss of the property via sale to the lender or another person may acquire the property by means of foreclosure and sale, and you may be evicted. Once foreclosure is initiated, additional amounts for legal fees and costs may be incurred. These sums can be significant. They may be added to amounts secured by the Security Instrument, and they may be required to be paid, to the extent permitted by law, if you wish to reinstate or satisfy the loan after foreclosure is initiated.

You have the right to reinstate after acceleration. SPS requires that you pay reinstatement amounts in certified funds. Certified funds include a bank wire, cashier's bank check, attorney trust account check, title or escrow company check, or Western Union Quick Collect. Please contact SPS at 800-635-9698 for instructions on submitting these funds. If you reinstate, the Security Instrument shall remain fully effective as if no foreclosure action had started.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian P.

## Payment Options

Please send payments to the following address:

| Sent via US Mail to: | Sent via overnight courier to: |
|---|---|
| **Select Portfolio Servicing, Inc.** | **Select Portfolio Servicing, Inc.** |
| **PO Box 65450 Salt Lake City, UT 84165-0450** | **Attn: Remittance Processing** |
| | **3217 S. Decker Lake Dr., Salt Lake City, UT 84119** |

Payments may be submitted in the following forms:

  (a) Personal check (if foreclosure has not been initiated)
  (b) Money order
  (c) Bank wire (electronic funds transfer). Please contact SPS for the information necessary to complete a bank wire.
  (d) Certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency.
  (e) Western Union Quick Collect. Reference the loan number above and deliver to Code City: Oswald, Code State: UT.

In some circumstances, you may be able to submit a payment through EZ Pay by calling 800-258-8602 or visiting our website at **www.spservicing.com**. Please remember that EZ Pay payments clear quickly, and you must have the funds in your checking account on the day you ask us to process a payment. We will obtain your consent prior to initiating payment and will advise you of any fee for this service which may be up to $15.00.

**You Have Options to Avoid Foreclosure!**
SPS is committed to home retention and offers many customer assistance programs designed to help customers avoid foreclosure. These programs are offered at no cost to our customers and are designed to help preserve home ownership or prevent foreclosure through structured repayment plans, special payment arrangements, modifications, short settlements, and deed-in-lieu options, if you are eligible. If you would like to learn more about these programs, you should immediately contact an SPS representative at our toll-free number, 800-635-9698, or visit our website at www.spservicing.com. Our representatives are available by phone Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

**If we can reach an agreement to resolve your default, we will not proceed with and/or commence foreclosure, as long as you comply with the agreement and make required payments.**

**Counseling**
HUD approved home ownership counseling may be available to you. You should call 800-569-4287 or TDD 800-877-8339, or go to HUD's website at www.hud.gov/ to find the HUD-approved housing counseling agency nearest you. You may be eligible for assistance from the Homeownership Preservation Foundation, which may be reached at the Homeowner's HOPE™ Hotline at 888-995-HOPE™ (888-995-4673) or at their website, www.995hope.org, or you may seek help from another non-profit foreclosure avoidance agency.

**Servicemembers Civil Relief Act (SCRA)**
SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

  •   Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
  •   Reserve and National Guard personnel who have been activated and are on Federal active duty, or
  •   National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.
Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or

· Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

If you have questions regarding eligibility and application requirements, please call us at 800-258-8602.

**Your Rights**
If you wish to dispute the default or the Amount Required to Cure the Default, you may do so by providing a written dispute to SPS at the following address:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

You may call SPS at our toll free number 800-258-8602 to discuss your dispute. However, to protect your rights under federal law, you will need to provide written notice to SPS if you believe that your dispute is unresolved.

You have the right to bring a court action to assert the non-existence of a default or any other defense you may have to acceleration and sale.

**You have options to avoid foreclosure. THE TIME TO ACT IS NOW. Please call us at 800-635-9698.**

Sincerely,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.**

**Minnesota - This collection agency is licensed by the Minnesota Department of Commerce
New York City - Collection Agency License # 1170514**

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



December 21, 2018

JUAN R PIMENTEL
158 BRIGGS ST
PROVIDENCE, RI 02905

## POR FAVOR LEA ESTA NOTIFICACIÓN CUIDADOSAMENTE, TOME MEDIDAS PARA EVITAR LA PÉRDIDA DE SU PROPIEDAD.

## NOTIFICACIÓN DE MORA – DERECHO A REDIMIR

**Número de Cuenta:**          0013125398
**Dirección de la Propiedad:**   158 - 160 BRIGGS STREET
                                 PROVIDENCE, RI 02905

Estimados/as Cliente(s):

La hipoteca sobre su propiedad está en mora como resultado de su incumplimiento de realizar los pagos requeridos según el Pagaré y la Escritura de Fideicomiso o Hipoteca (Instrumento de Garantía). Previamente, le hemos enviado cartas y comunicaciones acerca de esta mora, en un intento por resolver esta cuestión. Esta carta le provee información sobre la mora y los derechos que usted tiene para redimir la mora. Select Portfolio Servicing, Inc. (SPS) sirve su préstamo hipotecario y ha sido instruida en nombre del titular del pagaré de hacer valer sus derechos según las condiciones del Instrumento de Garantía, a menos que usted tome medidas para redimir la mora antes de la Fecha de Expiración que se muestra abajo. El Tenedor del Pagaré de su Préstamo es Deutsche Bank National Trust Company, as Trustee for the certificateholders of IXIS Real Estate Capital Trust 2005-HE3, Mortgage Pass-Through Certificates, Series 2005-HE3 (c/o SPS, PO Box 65250 Salt Lake City, UT 84165-0250).

Esta carta provee notificación de lo siguiente:

**La Mora**
Usted no ha realizado los pagos según el Pagaré y el Instrumento de Garantía como se exhibe más abajo. Esta carta es una demanda formal de pago.

**Acción Requerida para Redimir la Mora**
Para redimir esta mora, usted debe pagar la Suma Requerida para Redimir junto con los pagos que podrían subsecuentemente acumularse antes o en la Fecha de Expiración que se menciona más abajo.

**Monto Requerido para Redimir la Mora**
A partir de la fecha de esta carta, el total debido y requerido para redimir la mora de su préstamo es $322,198.14 (Monto Requerido para Redimir), según se detalla a continuación:



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

| Detalle del Monto Requerido para Redimir Fecha para Redimir: 01/23/2019 | | |
|---|---|---|
| El pago vence el 02/01/2008 | $ | 319,581.40 |
| *Monto total adeudado incluye Pagos en depósito (Impuestos/ Seguro) de $540.53* | | |
| Cargos por atrasos acumulados | | 0.00 |
| Adelantos hechos en nombre del Cliente | | 2,616.74 |
| Saldo de adelanto de pagos en depósito (Mora) | | 0.00 |
| **Suma Total Pendiente de Cobro** | $ | **322,198.14** |
| Saldos no utilizados | | 0.00 |
| **MONTO REQUERIDO A PARTIR DE December 21, 2018 PARA REDIMIR LA MORA** | $ | **322,198.14** |

Podrá haber vencimientos de pagos adicionales entre la fecha de esta carta y la Fecha de Expiración. Si usted desea redimir la mora después de que esos pagos venzan, deberán ser añadidos al Monto Requerido para Redimir. Usted tiene treinta (30) días desde la fecha de esta notificación para pagarnos el Monto Requerido para Redimir. La Fecha de Expiración es 01/23/2019. Podrán continuar aplicándose otras comisiones y cargos a su cuenta después de la fecha de esta carta, de acuerdo con los términos del Instrumento de Garantía. Además, pueden existir otras comisiones, adelantos de pagos en depósito o adelantos corporativos que SPS pagó en su nombre o adelanto a su cuenta que no están detallados en esta carta. Aunque esos montos no son requeridos para redimir el incumplimiento de pago, usted aún debe esos montos. Para obtener el monto requerido para poner el préstamo al día, por favor póngase en contacto con SPS al número gratuito 800-635-9698.

SPS no renuncia a sus derechos de exigir que usted pague esos montos en una fecha posterior. La aceptación de SPS de uno o más pagos por menos del Monto Requerido para Redimir no deberá ser considerada una renuncia a ningún derecho bajo el Instrumento de Garantía. Esto significa, por ejemplo, que si nos envía un pago por un monto inferior al Monto requerido para Curar, podemos aplicar este pago al monto adeudado y debido a que el pago no solucionó el incumplimiento, continúe el proceso hacia la ejecución hipotecaria. Tenga en cuenta que nuestra aceptación de dicho pago parcial no perjudica nuestro derecho a rechazar dicho pago o pago parcial en el futuro.

**Posible Consecuencias de una Ejecución Hipotecaria**
La falta de subsanación del incumplimiento en o antes de **01/23/2019** puede dar como resultado a la aceleración de las sumas garantizadas por el Instrumento de Garantía y la venta de la propiedad, a menos que se haya iniciado una alternativa de mitigación de pérdida a la ejecución hipotecaria. En otras palabras, SPS puede iniciar una ejecución hipotecaria y exigir el pago inmediato completo de la cantidad impaga pendiente en la cuenta. Una ejecución hipotecaria resultará en la pérdida involuntaria de la propiedad a través de la venta al prestador o a otra persona que pueda adquirir la propiedad a través de la ejecución hipotecaria y la venta, y usted podría ser desalojado. Una vez que se inicia la ejecución hipotecaria, se puede incurrir en gastos adicionales por honorarios legales y costos. Esas sumas pueden ser significativas. Podrían ser agregadas a los montos asegurados por el Instrumento de Garantía, y su pago podría ser requerido, según lo permita la ley, si usted desea restaurar o satisfacer el préstamo después de que se haya iniciado la ejecución hipotecaria.

Tienes el derecho de restablecer la cuenta después de la aceleración. SPS requiere que usted pague montos de restauración con fondos certificados. Los fondos certificados incluyen: giro bancario, cheque de caja, cheque de la cuenta de fideicomiso del abogado, título o cheque de la compañía del fideicomiso o Western Union Quick Collect. Por favor comuníquese con SPS al 800-635-9698 para obtener instrucciones acerca del envío de estos fondos. Si usted restaura, el Instrumento de Garantía continuará siendo completamente efectivo como si no se hubiese iniciado alguna acción de ejecución de hipoteca.

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

## Opciones de Pago

Por favor envíe los pagos a la siguiente dirección:

| Vía US Mail a:<br>**Select Portfolio Servicing, Inc.**<br>**PO Box 65450**<br>**Salt Lake City,**<br>**UT 84165-0450** | Enviado a través de correo de entrega inmediata a:<br>**Select Portfolio Servicing, Inc.**<br>**Atención: Remittance Processing**<br>**3217 S. Decker Lake Dr.,**<br>**Salt Lake City, UT 84119** |
|---|---|

Se podrán enviar los pagos a través de los siguientes medios:
- (a) Cheque personal (si la acción de ejecución hipotecaria no ha sido iniciada)
- (b) Giro postal
- (c) Transferencia bancaria (transferencia electrónica de fondos). Por favor, póngase en contacto con SPS para obtener la información necesaria para realizar una transferencia bancaria.
- (d) Cheque certificado, cheque bancario, cheque del tesoro o cheque de caja, si es que tal cheque está respaldado por una institución cuyos depósitos estén asegurados por una agencia federal.
- (e) Western Union Quick Collect. Refiera el número de préstamo citado anteriormente y envíe al Código de Ciudad: Oswald, Código Estado: UT.

En algunos casos, podrá enviar un pago a través de EZ Pay, llame al 800-258-8602 o visite nuestro sitio web en la siguiente dirección: **www.spservicing.com**. Por favor recuerde que los pagos EZ Pay se ejecutan rápidamente y usted debe tener los fondos en su cuenta corriente el día que usted nos pide que procesemos un pago. Nosotros obtendremos su consentimiento antes de iniciar el pago y le haremos saber si se aplica algún cargo por este servicio, que podrá ser de hasta $15.00.

## ¡Usted tiene opciones para evitar la Ejecución Hipotecaria!

SPS está comprometido con la conservación de las casas y ofrece varios programas de asistencia. Estos programas se ofrecen sin costo alguno a nuestros clientes y están diseñados para ayudar a conservar la propiedad de las casas y evitar la ejecución hipotecaria a través de planes de repago, arreglos estructurados de pago, modificaciones, acuerdos para saldar el préstamo y entrega voluntaria, si resulta elegible.

Si desea obtener más información sobre estos programas, comuníquese de inmediato con un representante de SPS en nuestro número gratuito 800-635-9698 o visite nuestra dirección de página web en http://www.spservicing.com.

Nuestros representantes están disponibles telefónicamente entre las 8 a.m. y las 11 p.m. de lunes a jueves; de 8 a.m. a 9 p.m. los viernes y de 8 a.m. a 2 p.m. los sábados, hora del Este.

**Si podemos alcanzar un acuerdo para resolver su mora, no continuaremos y/o comenzaremos la ejecución hipotecaria, siempre y cuando usted cumpla con el acuerdo y realice los pagos requeridos.**

## Asesoramiento

Usted puede recibir asesoramiento de una agencia de asesoría de vivienda aprobada por el HUD (Departamento de la Vivienda Federal y Desarrollo Urbano, por sus siglas en inglés). Para esto, llame al 800-569-4287 o al teléfono de texto (TDD) (800) 877-8339, o visite el sitio web de HUD en www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm para encontrar la agencia de asesoría de vivienda aprobada por el HUD más cercana. Usted puede ser elegible para recibir asistencia de Homeownership Preservation Foundation, la cual puede ser contactada llamando a la línea directa de Homeowner's HOPE™ al número 888-995-HOPE™ (888-995-4673) o visitando el sitio web en www.995hope.org; o usted puede buscar asistencia de otra agencia no gubernamental para recibir asesoría para evitar la ejecución hipotecaria.

## Ley de Auxilio Civil al Personal Militar (SCRA, por sus siglas en inglés)

SPS se compromete con la asistencia de propietarios de viviendas para los miembros activos del servicio y los veteranos del ejército de los Estados Unidos. Usted puede tener derecho a ciertas protecciones bajo la Ley de Auxilio Civil al Personal Militar (50 U.S.C. 3901 et seq.) con respecto a su tasa de interés y el riesgo de ejecución hipotecaria si es un miembro del servicio militar o un dependiente de un miembro del servicio militar. La asesoría para los miembros del servicio cubiertos está disponible en agencias tales como Military OneSource (800-342-9647 o www.militaryonesource.mil) y Asistencia Legal de las Fuerzas Armadas (http://legalassistance.law.af.mil). El servicio elegible puede incluir, pero no está limitado a:



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

- Miembros regulares de las Fuerzas Armadas de los EE.UU. (Ejército, Armada, Cuerpo de Marines de la Fuerza Aérea y Guardacostas), o
- Personal de la Reserva y la Guardia Nacional que han sido activados y están en servicio activo Federal, o
- Personal de la Guardia Nacional bajo una llamada u orden al servicio activo por más de 30 días consecutivos bajo la sección 502(f) del título 32 del Código de los Estados Unidos, a los efectos de responder a una emergencia nacional declarada por el Presidente y respaldada por fondos Federales, o
- Miembros del servicio activo de los cuerpos encargados del Servicio de Salud Pública y la Administración Nacional Oceánica y Atmosférica, o
- Ciertos ciudadanos de los Estados Unidos que prestan servicio en las fuerzas armadas de una nación con la que los Estados Unidos están aliados en el procesamiento de una guerra o acción militar.

Por favor envíe una notificación por escrito del servicio militar tan pronto como sea posible a:

Select Portfolio Servicing, Inc.
PO Box 65250 Salt Lake City, UT 84165-0250

Si tiene preguntas con respecto a la elegibilidad y los requisitos de la solicitud, llámenos al 800-635-9698.

**Sus derechos**
Si usted desea cuestionar su mora o la exactitud del Monto Requerido para Redimir la Mora, puede hacerlo realizando un cuestionamiento por escrito a SPS a la siguiente dirección:

Select Portfolio Servicing, Inc.
PO Box 65277 Salt Lake City, UT 84165-0277

Puede llamar a SPS a nuestro número gratuito (800) 258-8602 para discutir su cuestionamiento. Sin embargo, para proteger sus derechos bajo la ley federal, usted deberá entregar una notificación por escrito a SPS, si usted considera que su cuestionamiento no está resuelto.

Usted tiene el derecho de entablar una acción judicial para defender la inexistencia de un incumplimiento de pago o a cualquier otra defensa que pueda tener ante la aceleración y venta.

**Usted tiene opciones para evitar la ejecución hipotecaria. ES TIEMPO DE ACTUAR AHORA. Por favor llámenos al 800-635-9698.**

Atentamente,

Select Portfolio Servicing, Inc.

**Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.**

**Esta comunicación de un cobrador de morosos es un intento de cobrar una deuda y cualquier información obtenida será utilizada para ese propósito.**

**Minnesota – Esta agencia de cobro está autorizada por el Departamento de Comercio de Minnesota Ciudad de Nueva York – Collection Agency License #1170514**

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

# EXHIBIT D

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.



Department of Business
Regulation
*Banking Division*
1511 Pontiac Avenue,
Bldg. 69-2 Cranston,
Rhode Island 02920

# Banking Bulletin 2018-2

Mortgage Foreclosure Disclosure Form Pursuant to R.I. Gen. Law 34-27-3.1

The Disclosure form provided below in both English and Spanish versions must be provided to an individual consumer mortgagee by a mortgagor in order to comply with R.I. Gen Law 34-27-3.1.

**FORM 34-27-3.1**

## NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The Rhode Island Mortgage Foreclosure and Sale Act.

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

Re:_____ 0013125398

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

### NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost**. Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1-800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. If you do not have internet access, call the toll-free number above and request a printed list.

Mortgagee: Select Portfolio Servicing, Inc. as servicer

Mortgagee Address:    C/O Select Portfolio Servicing, Inc.

3217 S. Decker Lake Dr., Salt Lake City, UT 84119

Street, City,    State,    Zip    Code

Mortgagee Authorized Representative: Select Portfolio Servicing, Inc. as servicer

Date mailed:    December 21, 2018

Contact Information for Mortgagee Authorized Representative:

Telephone: 800-635-9698

Email: Customer.Correspondence@spservicing.com

Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

FORMULARIO 34-27-3.1

> AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR
> LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE
>
> ORIENTACIÓN HIPOTECARIA

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island § 34-27-3.1 de *The Rhode Island Mortgage Foreclosure and Sale Act* (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA

Asunto: 0013125398

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

### NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN IPOTECARIA

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el *United States Department of Housing and Urban Development* (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov. El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800-877-8339. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar

http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&weblistAction=search&searchstate=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.

Acreedor hipotecario: Select Portfolio Servicing, Inc. as servicer

> Dirección del Acreedor hipotecario:
> C/O Select Portfolio Servicing, Inc.
>
> 3217 S. Decker Lake Dr., Salt Lake City, UT 84119
>
> (Calle Ciudad, estado, código postal)

Representante autorizado de hipotecario: Select Portfolio Servicing, Inc. as servicer



Case Number: KC-2019-0552
Filed in Kent County Superior Court
Submitted: 5/16/2019 1:32 PM
Envelope: 2073548
Reviewer: Brian T.

Fecha de envío: December 21, 2018

Información de contacto: Select Portfolio Servicing, Inc.

Teléfono: 800-635-9698

Correo electrónico: Customer.Correspondence@spservicing.com